# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| FEDERAL LOGISTICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> UPS WORLDWIDE FORWARDING, INC., <br><br> Defendant. | Civil No. 06-1755 (JRT/FLN) <br><br><br> **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Paul E. Overson, **OVERSON LAW OFFICE, P.A.**, 7300 Hudson Boulevard, Suite 290, Oakdale, MN 55128, for plaintiff.

Martin S. Chester and Mary Cullen Yeager, **FAEGRE & BENSON, LLP**, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402, for defendant.

Federal Logistics, Inc. ("Federal") brought this action against UPS Worldwide Forwarding, Inc. ("UPS"), claiming UPS made oral assurances to Federal to provide compensation above the amount specified in a written agreement between the parties and failed to abide by its oral promises. UPS filed this motion for summary judgment, arguing that it is entitled to judgment in its favor because the terms of the written contract govern the agreement between the parties. For the reasons discussed below, the Court grants the motion.

**BACKGROUND**

UPS provides shipping services for packages and cargo all over the world. During busier times of the year, UPS contracts with "transportation brokers" to assist with its shipping needs. The brokers locate trucking companies where UPS needs packages shipped and arranges for those trucking companies to haul shipments for UPS. UPS enters into agreements with multiple brokers each peak season and generally sends each shipment request to the network of brokers for one of them to accept the job.

Federal and UPS entered into a written agreement in December 2005 that Federal would serve as a broker until December 2006. UPS had originally sought to enter into a contract with Lynden International, but Duryel Thomas, a Lynden representative, declined the opportunity and instead told Federal about it because he had had prior business dealings with Federal's president, David Petersen. Thomas then served as an intermediary between UPS and Federal until December 5, 2005, when Petersen, on behalf of Federal, signed an agreement with UPS.

The December 5 agreement states that Federal will receive $1.96 per mile plus fuel on each load for which it assumes responsibility. The contract does not specify the types of shipments to which it applies or limit the contract to certain routes but instead indicates that the $1.96 rate applies generally to "all of the operations specified in the Agreement," which include "the services requested by UPS in connection with the movement of UPS cargo." The contract does specify, however, that Federal will not be compensated for the repositioning of empty trucks from one area of the country to another. The contract also contains a merger clause, which states that the contract is a

"complete and exclusive statement" of the terms of the agreement, that the written contract "supersedes all prior agreements, written or oral," and that all modifications need be in writing. The parties also specified in the agreement that Kentucky law governs the contract.

Shortly after execution of the contract, UPS contacted Federal with transportation requests from all over the country. Federal fulfilled many of the requests, including requests that involved more costly conditions, such as repositioning of empty trucks from one area of the country to another and routes necessitating two drivers per truck. On or about December 21, 2005, Federal sent invoices to UPS. Those invoices charged more than the $1.96 per mile contract rate for some of the shipments, including some invoices charging as much as $3.00 per mile. The invoices also sought payment for the repositioning of empty trucks.

UPS representatives Keith Vibbert and Bill Cooper had a conference call with Petersen to discuss Federal's billing more than the contract rate. Petersen asserted that UPS representatives had orally assured him Federal would be compensated at a higher rate for some of the hauls. UPS agreed that David Gorman, its representative for one region of the country, offered to pay the $1.96 rate for repositioning done on an isolated occasion. UPS denied that any other UPS representative made any other representation contravening the terms of the written agreement, however. Ultimately, UPS agreed to pay the contract rate for all repositioning done in Gorman's region but in no other regions and to pay $2.06 per mile for the routes Peterson claimed caused Federal to incur substantially higher costs.

Federal filed this suit on April 20, 2006, claiming that the $1.96 contract rate only applied to four routes originating out of Addison, Illinois.  Federal also claims that four different UPS employees, Tom Piscatello, David Gorman, Keith Vibbert, and Joseph Foster, either intentionally misled Petersen into believing Federal would be compensated at a rate higher than $1.96 for other routes or told him after receipt of the invoices that UPS would pay them.  According to Federal, UPS owes $200,264.47 in unpaid invoices. It seeks relief on claims for breach of contract, waiver, quasi contract, quantum meruit, unjust enrichment, and equitable estoppel.

During discovery the parties took depositions of at least three UPS employees alleged to have told Petersen that Federal would receive extra compensation as well as a deposition of Petersen himself.  Each of the UPS employees denied that Petersen had ever been told that Federal would receive any rate higher than that in the contract. Petersen, however, testified that the initial contract only applied to the four Addison routes and that the conversations alleged did take place.  He referred to each of the three UPS employees as being a "liar."  Petersen also presented notes he had written about the conversations.  He testified that he made the notes close to the time of the conversations to create "documentation" in case a "major problem" arose and he had to sue UPS.

UPS filed this motion for summary judgment, arguing that all of Federal's claims fail as a matter of law.  Federal counters that Petersen's deposition and his notes create genuine issues of material fact sufficient to preclude entry of summary judgment.

**ANALYSIS**

I.   **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court is required to view the facts in a light most favorable to the nonmoving party. *Jurrens v. Hartford Life Insurance Co.*, 190 F.3d 919, 922 (8th Cir. 1999). Summary judgment is to be granted where the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

II.   **BREACH OF CONTRACT AND WAIVER**

Federal asserts claims for breach of contract and waiver.  Although conceding that the text of the contract does not limit the contract to routes coming out of Addison, Illinois, Federal maintains that subsequent conversations between UPS representatives and Petersen modified the terms of the contract.  UPS claims that summary judgment is appropriate because there is no dispute as to whether it complied with the terms of the agreement and because Petersen's unsupported, self-serving allegations that UPS representatives made assertions contradicting the contract's terms are not sufficient to preclude entry of summary judgment.

The parties entered into a contract wherein Federal agreed to "perform the services required by UPS," and the parties agreed that the rate of $1.96 per mile would apply to "all . . . operations" under the contract. Federal does not contend that the terms of the contract are ambiguous, and the Court agrees. *See Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 385 (Ky. Ct. App. 2002) (holding that contracts are ambiguous where the terms are susceptible to different interpretations other than their plain meanings). Since it is undisputed that UPS paid Federal at least $1.96 per mile for all of the routes covered by the written terms, the Court finds as a matter of law that UPS did not breach the written contract.

Federal contends, nonetheless, that UPS breached the agreement because UPS waived the effect of some of the written provisions with oral modifications. Although the contract specifies that the written agreement "supersedes all prior agreements, written or oral" and that all modifications are invalid unless made in a writing, Federal maintains that these provisions are not binding and that parties to a written contract can orally modify or waive contract terms even where there are clauses such as those in the contract in this case, citing to the opinion in *Dalton v. Mullins*, 293 S.W.2d 470 (Ky. 1956), where the court held "a written contract may be modified or abandoned by a subsequent oral agreement, [where] the proof to support such an assertion [is] clear and convincing." *Id.* at 475. *See also Wehr Constructors, Inc. v. Steel Fabricators, Inc.*, 769 S.W.2d 51 (Ky. Ct. App. 1989).

Federal then contends that a factual dispute precludes entry of summary judgment because Petersen testified in his deposition that UPS representatives made oral

representations that the terms of the written contract would not apply to the routes and shipments Federal agreed to undertake. The handwritten notes that Peterson made contemporaneously or close to the time at which the conversations took place, Federal asserts, support the deposition testimony and also make summary judgment inappropriate in this case.

A party seeking to avoid entry of summary judgment cannot rest on "mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). Moreover, a party's "allegations and conclusory statements" that a witness for the other side "is not credible are insufficient to preclude summary judgment." *Dunavant v. Moore*, 907 F.2d 77, 80 (8th Cir. 1990). Petersen stated in his deposition that UPS representatives made representations contradicting the terms of the written contract and lied during their depositions, but these assertions are no more than "self serving" allegations unsupported by independent evidence. *See Connolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). This Court has previously held assertions such as these to be insufficient to avoid entry of summary judgment. *See, e.g.*, *R&A Small Engine, Inc. v. Midwest Stihl, Inc.*, Civ. No. 06-877, 2006 WL 3758292 at *5 (D. Minn. Dec. 20, 2006).

If the testimony is not alone sufficient to preclude entry of judgment in favor of UPS, Federal maintains that the Court should deny the motion because Petersen's handwritten notes corroborate the testimony. These notes, however, are each approximately eight to ten word entries that contain only vague phrases such as "rates do

not apply" and "contract pricing would not apply." Moreoever, Petersen made the notes in preparation for litigation, and Federal has cited no authority for its position that uncorroborated and self serving notes such as these are sufficient to avoid entry of summary judgment. The Court finds that the notes, even when considered with the deposition testimony, are not the type of "independent evidence" necessary to defeat a motion for summary judgment. *See Davenport v. Riverview Gardens Sch. Dist.*, 30 F.3d 940, 945 (8th Cir. 1994).

Federal has offered no corroborated or substantiated evidence that UPS agreed to pay Federal a rate higher than the price set forth in the written agreement, and the Court finds that its conclusory, unsupported evidence is insufficient to preclude entry of summary judgment in UPS's favor on these claims.

### III.   FEDERAL'S REMAINING CLAIMS

UPS also argues it is entitled to summary judgment on the other claims asserted by Federal, those for quasi contract (also referred to as a "contract implied by law"), quantum meruit, unjust enrichment, and equitable estoppel. Federal maintains that it should be allowed to proceed to trial on these claims.

UPS contends that the first three of these claims – implied contract, quantum meruit, and unjust enrichment – are treated as the same cause of action in Kentucky. *See Perkins v. Daugherty*, 722 S.W.2d 907, 909 (Ky. Ct. App. 1987) (noting that a "contract implied by law allows for recovery quantum meruit for another's unjust enrichment"); *Guarantee Elec. Co. v. Big Rivers Elec. Corp.*, 669 F. Supp. 1371, 1380-81 (W.D. Ky. 1987) (treating claims for quantum meruit, unjust enrichment, and quasi contract as the

same).  Regardless of the title given to the claim, UPS then argues that it should be dismissed because no such claim can continue where, as here, it is asserted to contravene the terms of an express contract. *See Mike Denniston, Inc. v. Commonwealth of Kentucky*, No. 2003-CA-294-MR, 2004 WL 595229 at *6 (Ky. Ct. App. Mar. 6, 2004) (holding that where an express contract creates an obligation, there cannot be an implied contract covering the same subject matter); *Envirotech Corp. v. Tennessee Valley Auth.*, 715 F. Supp. 190, 193 (W.D. Ky. 1988) (same for quantum meruit); *Codell Constr. Co. v. Commonwealth of Kentucky*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1977) (same for unjust enrichment).

In its response Federal does not contest either proposition forwarded by UPS, arguing instead that it is entitled to relief on these claims because it would be inequitable for UPS to retain the benefit of Federal's services without having to pay a fair price for them.  Even if Federal did not profit from its relationship with UPS, however, it is not the role of the Court to relieve a party from the consequences of a "a simple old-fashioned bad bargain." *See Louisville Bear Safety Service, Inc. v. South Central Bell Telephone Co.*, 571 S.W.2d 438, 440 (Ky. Ct. App. 1978) (internal citation and quotation omitted). The Court grants judgment as a matter of law to UPS on these claims.

The only remaining claim is for equitable estoppel.  For Federal to proceed to trial under Kentucky law on a claim for equitable estoppel, it must put forth evidence purporting to show that UPS: (1) committed conduct which amounts to a false representation or concealment of material facts (2) with the intention or expectation that the conduct would be acted upon by Federal, while (3) knowing the real facts. *See*

*Gosney v. Glenn*, 163 S.W.3d 894, 899 (Ky. Ct. App. 2005). Federal must also show that at the time the conduct was committed it (1) lacked knowledge of the truth as to the facts in question and (2) relied upon UPS's conduct (3) to its own detriment. *Id.*

The Court has already determined that Federal has failed to present sufficient evidence such that a "reasonable factfinder" could conclude UPS representatives made any type of false representation to Petersen, *see Fair v. Norris*, 480 F.3d 865, 871 (8th Cir. 2007), so the Court need not go beyond the first element to conclude that Federal is unable to proceed on this claim. As a result, the Court also grants summary judgment to UPS on Federal's claim for equitable estoppel.

### ORDER

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that defendant's motion for summary judgment dated June 11, 2007 [Docket No. 31] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: October 31, 2007            s/ John R. Tunheim
at Minneapolis, Minnesota.                JOHN R. TUNHEIM
                                              United States District Judge